No. 27,554.

HARRY L. CHISLER and WILBUR E. STONE, *Appellants,* v. D. E. L. BYERS et al., *Appellees.*

**(257 Pac. 929.)**

SYLLABUS BY THE COURT.

1. TROVER AND CONVERSION—*Instructions.* There was no error in refusing to give requested instructions, nor in those given.

2. SAME—*Conversion as Question of Fact.* Under the circumstances shown in the opinion the question of whether or not there had been a conversion of personal property was a question of fact to be determined by the jury under proper instructions by the court.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed July 9, 1927. Affirmed.

*Carr W. Taylor,* of Hutchinson, and *F. J. Oyler,* of Iola, for the appellants.

*F. Dumont Smith, Eustace Smith* and *Arthur T. Symns,* all of Hutchinson, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.:  The plaintiffs sued to recover $4,010 for the conversion of oil-well casing.  Judgment was rendered in favor of the defendant Gano.  No judgment was rendered concerning defendants Byers or Huffine.  The plaintiffs appeal.

Special questions were answered by the jury as follows:

"1. What was the fair market value of the pipe in controversy in the O'Halloran well at the time the plaintiffs made their demand on Gano in September, 1924?  A. $598.

"2. What was the fair market value of the pipe in controversy after it was pulled from the O'Halloran well and racked up or laid on the ground?  A. $525."

George E. Gano, as trustee, owned an oil and gas lease on land in Reno county.  S. J. Haynes, under a contract with Gano, drilled a well to a depth of 2,610 feet.  Thereafter, on April 16, 1924, Gano, as trustee, entered into a written contract with the defendant D. E. L. Byers to further drill the well from the depth of 2,610 feet to 3,500 feet for $10,000.  Byers agreed to "furnish a string of 24-pound 6⅝-inch casing, and a string of 20-pound 5¾₆-inch casing for the completion of said well."  The contract also provided that—

Trover and Conversion, 38 Cyc. pp. 2106 n. 38, 2107 n. 49.

"Second party hereto agrees when he shall have completed said hole to leave all material, tools and equipment mentioned in exhibit A on said property, but second party shall have the right to then remove all additional tools and pipe placed thereon by him without interference.

"It is further agreed that when party of the second part has completed the well that he shall have the use of said tools with which to pull his 6⅝-inch and 5¾₆-inch casing, providing same is done at once, and such fuel oil as remains shall be left for the owner of said tools to use without cost to him."

On May 2, 1924, D. E. L. Byers entered into a contract with the plaintiffs by which on certain terms and conditions they agreed "to furnish the use of the following-described used oil-well casing" to Byers:

"Approx. 2,700 lineal feet of 6⅝-inch 24-lb. casing valued at list price of $1.37 per foot, with rental specification of .27½ (cts.) per foot, and with an agreed selling price, (if purchased within terms of this contract) of $1 per foot . . . all of which shall be inspected, accepted finally, and received by second party at such points, and by him transported, at his own expense, from such points to the Castleton well in Reno county, Kansas, located about 1½ miles in N. W. from Castleton, Kansas, and which may be used in and upon said well, in the regular course of procedure in the completion thereof, for a period of ninety days from the date hereof.

"Said casing and all the collars and protectors necessary therewith shall be and remain the sole property of the aforesaid joint owners. . . .

"In consideration of which the party of second part agrees to handle and to have handled all of the said casing in a careful and workmanlike manner at all times, and to return the same properly fitted with protectors, on or before expiration of the term provided, in as good condition as when received, ordinary wear and tear alone excepted. . . .

"Party of the second part agrees to at all times make available to the first parties the free and unobstructed use of all necessary rigs, tanks, tools and equipment, for the pulling and removal of the casing from the said well in the event that he shall not either redeliver same as agreed or comply with the terms of this contract as to extensions of time, or any of the other terms of this contract, and second party hereby binds himself, his heirs or assigns, as responsible to first parties for any proper expense they may incur in pulling, recovering, and redelivering said casing to themselves, or for any casing lost in such recovery, and redelivery, in the event of his failure to so comply with this contract."

That contract did not describe any land. It was signed and sworn to, but it was not acknowledged. It was recorded in Reno county.

Byers obtained the casing, for the conversion of which this action is brought, used it in the well which by him was drilled to a depth of 3,200 feet, when he became financially involved and could not drill any further. A settlement was made between Gano and Byers by

which the latter "stepped down and out." At that time 700 feet of the casing that had been furnished by the plaintiffs was racked on top of the ground; the remainder was in the well. An arrangement was then made by Gano with L. A. Douglas to finish drilling the well to the depth of 3,500 feet.

This litigation has heretofore been before this court. The former decision is found at *Chisler v. Byers*, 121 Kan. 478, after that decision the case was remanded to the district court, where it was again tried. The present appeal is from a judgment on that trial, which was by a jury, and a verdict was rendered in favor of the defendant Gano. Outside the recorded contract between the plaintiffs and Byers, the abstracts do not show any evidence which tended to prove that Gano had any knowledge of any claim of the plaintiffs to the pipe furnished by them until the settlement between Gano and Byers, when the latter ceased drilling in the well. The evidence of Gano tended to prove that he did not know anything of the claim of the plaintiffs until they demanded the pipe from him. The evidence of the defendant Gano also tended to prove that at the time the demand was made on him by the plaintiffs for the casing, he told the plaintiffs that they could have the casing; and that he would furnish the tools and oil for them with which to pull the casing. He also told them that if they damaged the well in so doing they would be liable to him for the damage done. They did not attempt to take the casing, but immediately commenced this action.

1. Complaint is made of the instructions. The plaintiffs requested certain instructions, which were refused. The court gave other instructions, which the plaintiffs argue were erroneous. The effect of the instructions requested by the plaintiffs was to direct the jury to return a verdict in favor of the plaintiffs. The requested instructions were also to the effect that the threat of the defendant Gano to hold the plaintiffs responsible for damages if they injured the well in removing the casing was such an unwarranted interference with the rights of the plaintiffs as constituted a conversion of the casing, and that the one question for the consideration of the jury was the value of the casing. There was conflicting evidence concerning that value.

One instruction requested by the plaintiffs reads as follows:

"You are instructed, gentlemen of the jury, that whoever interferes with or

stands in the way of the true owner of property asserting and securing his rights to its possession, thereby interfering with the owner's actual rights, subjects himself to the remedy sought to be enforced in this suit. Any distinct act of dominion wrongfully exerted over one's property, in denial of his right, or inconsistent with it, is a conversion. The action of trover being founded on a conjoint right of property and possession, the act of the defendant which negatives or is inconsistent with such rights amounts, in law, to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant. Nor is it necessary that it should be shown that he had applied it to his own use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's rights? If he does, that is, in law, a conversion, be it for his own or another person's use.

"You are therefore instructed that the refusal of the defendant George Gano to deliver said pipe to the plaintiffs and the retention by him of said pipe for use in said oil well constituted a conversion of said property under the law, and your verdict should be for the plaintiffs for the full value of said pipe and interest from the date of said demand."

That instruction was given with these words added: "A mere temporary exclusion is not enough." By the instructions given, the court submitted to the jury the question of the conversion of the casing, and by the quoted instruction requested by the plaintiffs, with the added words, the court told the jury what constituted a conversion. Although it is earnestly argued that it was error to refuse to give the instructions requested and that the instructions given were erroneous, the court is unable to agree with the argument. There does not appear to have been any error in the instructions given nor in refusing to give those requested.

2. When this action was here before, this court said:

"The owners of some casing leased it for ninety days. The lessee used it in a well which he was drilling under contract, but which he later abandoned, making a settlement with the owner of the well, in the course of which he told who owned the casing. The ninety days having expired, the owners of the casing demanded it of the owner of the well, who refused to consent to their taking it except on condition they would not injure the well in removing it, saying it was theirs and they could go and get it, but if they pulled it he would sue them for damages. It is held that upon a showing of these facts in an action brought by them for conversion a demurrer to the evidence should have been overruled." (*Chisler v. Byers,* 121 Kan. 478, 247 Pac. 850.)

That was an appeal from a judgment in favor of the defendants rendered on their demurrer to the evidence introduced by the plaintiffs. On the last trial the evidence was conflicting concerning what was said by Gano in response to the demand of the plaintiffs for the pipe.

Mr. Stone, one of the plaintiffs, testified that—

"I showed him my contract which had been on record here all that time, and I asked him to either pay some rental on it or pay me for it, or return it. He wouldn't do any one of those things. I said, 'What do you expect me to do?' He said, 'It is down there; you can go and get it, but if you do I will sue you for damages.' "

Mr. Gano, one of the defendants, testified:

"There is 700 feet of this pipe that is on the rack that has never been in the well since we took it over. You can take that. . . . There is 2,300 feet that is in the well, you can pull that if you want it. . . . You can have my tools and rig and I will furnish you the oil and be glad to have you go and get it because I cannot get a contractor to take this well—take the contract job on this well on account of the condition of this pipe. . . . Your pipe is worthless. I do not want it anyway. It is unfit to go in an oil well in my judgment. . . .

"I told him there had been $35,000 approximately invested in the well, and that if he pulled that pipe he was taking a long chance in damaging the hole. That it cost a lot of money, that we would probably hold him responsible for the damage if he damaged the hole in pulling the pipe."

On this question the court instructed the jury as follows:

"You are instructed that it is your duty to determine whether in the conversation between the plaintiffs and the defendant Gano, at the office of the defendant in Hutchinson on or about September 20, 1924, when the plaintiffs made a demand upon the defendant Gano for the possession of the pipe, the statements made by the defendant Gano in answer to the plaintiffs' demand amounted to an unlawful conversion of the pipe in controversy under the law as herein given you. It is for you to determine whether the plaintiffs' statement of the conversation or the defendant's statement is correct, and from the statements which you find were made to determine the question of the liability of the defendant Gano in this case."

"And in this connection you are instructed that if you find the statement made by the defendant Gano when plaintiffs made demand upon him for the possession of the pipe on or about September 20, 1924, was in effect and amounted to a denial or repudiation of plaintiffs' right to the casing, which right they undoubtedly at the time had provided they exercised due skill and caution in pulling casing, doing only such injury to the well as necessarily would result from pulling the pipe in an ordinarily careful, skillful and cautious manner, then and in that case such a refusal would be sufficient to authorize you to find a conversion of the pipe in controversy on the part of the defendant Gano. On the other hand, if you fail to find that said statement of Gano amounted to a denial and repudiation of plaintiffs' said rights, then your verdict should be for the defendant Gano."

This instruction should be considered in connection with the

instruction requested by the plaintiffs which, somewhat modified, was given by the court. It has been quoted.

The contract between the plaintiffs and Byers by which the latter leased the pipe from the former was not a chattel mortgage; it did not convey nor affect real estate; it was not acknowledged; it was not entitled to be recorded; and recording it did not impart notice of its contents to Gano. (*Meskiman v. Day,* 35 Kan. 46, 10 Pac. 14; *Fischer v. Cowles,* 41 Kan. 418, 21 Pac. 228.)

Whether or not there had been a conversion of the pipe by Gano was a question of fact to be determined by the jury under proper instructions. Such instructions were given, and the question of fact was found against the plaintiffs by the jury. The verdict is conclusive on that question.

The plaintiffs argue that there was error in the admission of evidence and in comments made by the court in the presence of the jury during the trial of the case. A number of complaints are made concerning the admission of evidence and concerning the comments of the court. Each of these has been examined. Not one of them appears to have been prejudicially erroneous. The record discloses that the trial was a closely contested one, and that there was colloquial controversy between the court and counsel for the plaintiffs. There does not appear to have been any error prejudicial to their rights.

The judgment is affirmed.

HARVEY, J., dissenting.